PEOPLE v. UTTER.

1. CRIMINAL LAW—APPEAL AND ERROR—PLEA OF GUILTY—INVESTIGATION BY CIRCUIT JUDGE—RECORD BINDING UPON SUPREME COURT.
The Supreme Court is bound by the record of sentence in a criminal case which shows upon its face compliance with the provisions of 3 Comp. Laws 1915, § 15830, requiring an investigation by the circuit judge, after a plea of guilty has been entered, to satisfy himself that it was made freely and understandingly, although no detailed statement of any private or other interview with defendant after he changed his plea from not guilty to guilty is contained in the record.

2. SAME—POWER OF COURT TO CHANGE PLEA BEFORE JUDGMENT.
At any time before sentence the plea of guilty may be changed by the court to one of not guilty.

3. SAME—CHANGE OF PLEA—JURY TRIAL.
Where, in a prosecution for murder, after a plea of guilty had been entered and an investigation by the circuit judge in compliance with 3 Comp. Laws 1915, § 15830, had been made, and before sentence, defendant protested that he was not guilty, that he did not understand that he had pleaded guilty, and demanded a jury trial, it was the duty of the court to enter a plea of not guilty and place him upon trial before a jury.

4. SAME—ERRONEOUS CONVICTION—NEW TRIAL.

Where the Supreme Court finds that the defendant in a criminal prosecution was erroneously convicted upon his plea of guilty, the case should go back to the circuit court for re-arraignment and new trial, it being the duty of the court, if possible, to rectify the error; the earlier rule that in such case he should be discharged having been overruled and abrogated in *People* v. *Farrell*, 146 Mich. 264.

Error to Ionia; Davis (Frank D. M.), J. Submitted January 15, 1920. (Docket No. 102.) Decided February 27, 1920.

Warren Utter was convicted of murder, and sentenced to imprisonment for life in the branch of the State prison at Marquette. Reversed.

*W. J. Barnard* (*Earl L. Burhans*, of counsel), for appellant.

*Alex. J. Groesbeck*, Attorney General, and *J. Clyde Watt*, Prosecuting Attorney, for the people.

STONE, J. The defendant and appellant and James Edward Ward and Charles Ward were, on January 3, 1919, arrested on a warrant charging them with the murder of one John Smary, at the city of Ionia, in Ionia county. They were charged with having assaulted said Smary with a deadly weapon on the 25th day of November, 1918, at the city of Ionia aforesaid, for the purpose of committing the crime of robbery upon the said John Smary, and that the said Smary died from the effects of said assault on the 29th day of November, 1918. All of the defendants waived an examination and were held to the circuit court for trial.

On January 4, 1919, an information was filed in the circuit court charging all of the defendants with murder in the manner above stated. On the same day

Frank C. Miller, an attorney of that court, was, by order of the court, appointed *amicus curiæ* in said cause, and as counsel for the defendants. Upon the arraignment of the defendants they all entered a plea of not guilty. Then the following occurred:

*"The Court:* Come into my room and I will talk with you."

Thereupon the judge and James Edward Ward retired to the judge's chambers for a time and then returned into court.

*"The Court:* Charles Ward and Warren Utter you may come into my room."

Whereupon the judge, Charles Ward and Warren Utter retired to the judge's chambers for a time, and then returned into court. Whereupon the following occurred:

*"The Court:* Charles Ward and Warren Utter after consultation with the court and F. C. Miller, who has been appointed to look after their interests, and discuss the matter freely, have informed the court that they want to change their plea of not guilty to a plea of guilty. Is that right?"

The defendant then answered: "Yes, sir."

*"The Court:* You understand it fully now?
*"Defendant:* Yes, sir.
*"The Court:* That is all for you boys now. Mr. Miller thinks in behalf of these young men he should insist on the examination of the witnesses that will be offered here. We will proceed with the testimony that will have to be taken."

Whereupon the court proceeded to take testimony of numerous witnesses to determine the degree of the crime. Among other witnesses called and sworn was this defendant. His testimony is very lengthy and went into the details of the robbery and the circumstances surrounding it. He testified that he did not strike the blow, and took, as he claimed, no active part

in the assault. He testified, however, to a division of the money among the three defendants after the robbery, in which he stated that he received $45 in currency, and there was to be a further division when a $10 bill could be broken. The defendant, and also his codefendants, made a written statement on the 31st day of December, 1918, in the nature of a confession, which was introduced in evidence upon this examination. This testimony of the defendant is too lengthy to be here inserted. It is sufficient to say that during his examination the following occurred:

"*Q.* Any further statement you want to make now? Do you want to say anything further?

"*A.* Yes, sir.

"*Q.* State anything you wish now in connection with this.

"*A.* I would like to have this—like to state that— I don't know just how to word it.

"*Q.* Take your time, put it in your own language.

"*A.* I am not guilty, I want to—and trial, I would like one.

"*Q.* You say the statements made by Charles and Ed. Ward are not true, that is, as to the part you took in the transaction?

"*A.* No, sir, they are not."

After the prosecuting attorney and Mr. Miller had completed the examination of the defendant the following examination occurred by the court, in the public examination:

"*Q.* After you came into court this morning, you and Charley had a talk with me, didn't you?

"*A.* Yes, sir.

"*Q.* You stated to me you didn't understand much that was read by the prosecuting attorney, it was so long?

"*A.* No, sir, I didn't understand it.

"*Q.* I explained to you, didn't I, in detail that you were charged with assaulting and robbing the old man, Smary, and that in making that assault and in committing the robbery that you killed him. I explained it to you substantially that way?

"*A.* This what explains—I didn't get it through my head that way. You were talking to Charley.

"*Q.* I was talking to each one of you—didn't I?

"*A.* Yes, sir.

"*Q.* Do you remember Charley making the statement there to me all about this transaction?

"*A.* I heard him, yes.

"*Q.* Did you make a statement to me of your part of the transaction?

"*A.* I don't know whether I did or not.

"*Q.* And came back into court and plead guilty after making that statement talking to me.

"*A.* No, I don't think I plead guilty.

"*Q.* Did I call you to the desk and ask you if that was your desire to change your plea, in the presence of the officers of the court?

"*A.* I got it through my head, change your plea and change it the other way for them.

"*Q.* You had already plead not guilty?

"*A.* I plead not guilty, yes, sir.

"*Q.* After coming out from my room where I talked with you and Charley together, you requested that your plea be changed to that of guilty, didn't you? You so announced it in open court? By myself you were asked if it was your desire, is that true, up in front of the desk there?

"*A.* When we spoke of changing my plea the way—

"*Q.* You were up in front of the desk?

"*A.* Yes, sir.

"*Q.* What did you say when I asked you if that was your wish?

"*A.* I didn't say anything.

"*Q.* Do you remember my having it noted upon the books that was your desire, that you assented to it, said yes?

"*A.* No, I don't.

"*Q.* Do you remember what Charley's statement was there to me in your presence this forenoon?

"*A.* No, I couldn't tell you.

"*Q.* You don't know whether it was the same, in substance, he has testified to on the stand?

"*A.* No, I couldn't swear to it.

"*Q.* Do you remember saying this to me: That you were willing to plead guilty to the robbery, that you

didn't intend to do any killing when you went there, do you remember saying that to me?

"*A.* No.

"*Q.* And I said it didn't make any difference about whether you intended to kill him or not if you actually did in committing another crime, do you remember my telling you that?

"*A.* Yes, I remember your telling something about that, I told you I couldn't get it through my head if you spoke that way.

"*Q.* Do you remember my asking you if you went up there with them, with these two young men?

"*A.* Yes, sir.

"*Q.* Do you remember my asking you if you knew he had a club with him?

"*A.* No.

"*Q.* You don't?

"*A.* No, sir, I don't.

"*Q.* What did you say when I asked you if you went up there with them?

"*A.* I said I went up there with them; I can remember that much.

"*Q.* Did I ask you if you were present when this thing was done and you said you hid behind the bushes until it was over?

"*A.* No, I don't remember it.

"*Q.* Don't remember it?

"*A.* No, sir.

"*Q.* Didn't I tell you at that time much depended upon your statement of the matter, that all I wanted was the truth from you two boys?

"*A.* Yes, sir, I remember you spoke of the truth, that you wanted the truth.

"*Q.* I explained the matter to you in all detail, didn't I? Told you Mr. Miller had been appointed by the court to see you had fair play and justice here?

"*A.* Yes, I remember you told me about Miller.

"*Q.* And I called Mr. Miller in there to talk with you further?

"*A.* Yes, sir.

"*Q.* I went out of the room and left you to talk with him in regard to this matter. Did you state to him you desired to change your plea then, from not guilty to guilty?

"*A.* No.

"*Q.* You came out here and so announced to the court?

"*A.* He came out here something about changing their plea, but I didn't get it through my head the words he spoke—want to change your plea—I supposed it was changed the other way.

"*Q.* You heard the words 'not guilty,' changed to guilty?

"No response.

"*Q.* You knew what not guilty was when you stood up before the desk?

"*A.* Yes, sir.

"*Q.* Did you know what 'guilty' meant?

"*A.* Yes, sir.

"*Q.* Leaving that word 'not' off. You knew what is meant to change from one to the other, didn't you? Did you understand what it was to change from not guilty to guilty?

"*A.* No, I don't just understand.

"*Q.* Do you remember I said to you if you came in here and pleaded guilty, after the testimony was taken and I found your plea was made intelligently and according to the testimony, what the penalty would have to be and to be very careful about making any change in your plea, that the sentence would have to be for life and you must do so understandingly; do you remember that?

"*A.* No, I don't remember that.

"That is all."

Then the following occurred:

"*The Court:* Anything further to say, Mr. Utter, anything further to say about this matter, why sentence should not be pronounced now?

"*Mr. Utter:* Yes, sir.

"*The Court:* What more have you to say?

"*Mr. Utter:* I am not guilty. I want to hear (what) law is according to what Mr. Miller said, I would like to have a jury, or a trial or—"

The court then proceeded to sentence the Wards to imprisonment in the branch prison at Marquette for life; whereupon the court said:

"In your case, Mr. Utter, the case will stand continued until Monday morning (this being Saturday)."

Thereafter, and on Monday, the 6th day of January, the court proceeded to sentence this defendant. During the course of its remarks the court said, alluding to what had occurred before:

"The statement you then made to me was that the statements made by the other boys were true?

"*Mr. Utter:* I told you plainly and decidedly on the stand I didn't know anything about it; I said that Saturday.

"*The Court:* I know you said that, but after these confessions it is rather late to take your statement back. The law imposes upon me a burden that has to be performed and the people of this county are entitled to the protection of the law. However painful or disagreeable it is for the judge, it is his duty, under the law, to see that society is protected, and it could not well be if self-confessed robbers and murderers should be allowed at large. There is only one way, if time should reveal you are innocent or that you were the victim of circumstances, and that is for an appeal to be made to the governor of this State. He has the right to either lessen your term or sentence or discharge you entirely by pardon. That is not within the power of the trial judge."

The court thereupon proceeded to sentence the defendant to be confined in the branch prison at Marquette at hard labor for the term of his natural life, the court remarking, "that is all."

Defendant (turns, facing the audience and with right hand uplifted) says:

"I am not guilty, people, of this crime that is held over me. The truth is before me, Lord and Heaven, I am not guilty of what has been put upon me, the Lord helping me."

The defendant is now serving his sentence. The sentence of the court, as entered on the record in the journal, bearing date January 6, 1919, entitled in the case, reads as follows:

"Warren Utter, the defendant, having been upon his voluntary plea of guilty duly convicted of the

crime of murder in the first degree, as appears from the record thereof, and having been, on motion of the prosecuting attorney, brought to the bar of the court for sentence, and having been asked by the court if he had anything to say why judgment should not be pronounced against him, and alleging no reason to the contrary, and the judge of said court having become satisfied, after such investigation as he deemed necessary for that purpose, respecting the nature of the case, and the circumstances of such plea, that the same was made freely, with full knowledge of the accusation against him, and without undue influence: Therefore, it is ordered and adjudged by the said court, now here, that the said Warren Utter be confined in the State House of Correction and Branch of the State Prison in the Upper Peninsula, Marquette, Michigan, at hard labor for the period of his life."

The case is brought here by writ of error, and two errors are assigned:

(1) That the court erred in refusing to give the defendant, Warren Utter, a jury trial, as the record shows that the defendant did not plead guilty intelligently. That such plea was obtained from him without his being fully advised as to his rights in the premises.

(2) The court erred in proceeding to sentence the defendant, Warren Utter, without giving him a trial, for the reason that the plea of guilty entered was unintelligently made, and defendant so stated in open court, that he was not guilty and demanded a trial by jury, and that the conviction should be set aside and the defendant remanded for trial.

It is the claim of counsel for appellant that the circuit court did not perform its duty in satisfying itself that the defendant's plea of guilty was made freely, and with full knowledge of the nature of the accusation, after the appellant Utter had pleaded guilty, as required by section 15830, 3 Comp. Laws 1915, for the reason that the private conversation held between the court and defendant took place before the plea of

guilty was interposed. In this claim counsel must have overlooked the record of the sentence of the court, above set forth, which shows, upon its face, a compliance with that term of the statute. In the face of this record, we cannot say that that portion of the statute was not complied with. It is true that there is in this record no detailed statement of any private or other interview with the defendant after the change of his plea from not guilty to guilty. We are, however, bound by the record of the sentence in that regard. The statute referred to reads as follows:

"(15830) SECTION 1. *The People of the State of Michigan enact,* That whenever any person shall plead guilty to an information filed against him in any circuit court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied, after such investigation as he may deem necessary for that purpose, respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered, and order a trial of the issue thus formed."

This provision of the statute has been the law of this State since 1875. Its provisions have been considered by this court many times, as will appear by the compiler's note to this section.

Enough appears in this record to convince us that the defendant was a man of limited intelligence, and entirely ignorant of legal proceedings. The course pursued by the circuit judge, of the examination, of the defendant after he had entered his plea of not guilty, was at least unusual. After a careful reading of all the evidence produced before the court, and especially that of the examination of this defendant, we are in grave doubt whether the defendant understood

the nature of his plea of guilty. Under oath he protested that he did not, and also when brought before the court for sentence, he protested that he was not guilty; that he did not understand that he had pleaded guilty, and he not only demanded, but appealed to the court for, a jury trial. This court said in *O'Hara* v. *People*, 41 Mich. 623:

"When a convicted person is brought up for sentence he has rights still, and it is specially incumbent on the judge to take care that they are fully observed and protected. No sort of pressure can be permitted to bring the party to forego any right or advantage however slight."

The serious question in our minds is whether the duty of the court was fully performed under the last clause of the section above quoted, which reads as follows:

"And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered, and order a trial of the issue thus formed."

We have no question that at any time before sentence the plea of guilty may be changed by the court to one of not guilty. Does this record show that the plea of guilty was a voluntary one? In the light of this record, we are constrained to say that there is strong evidence that the plea was involuntary, or at least not fully understood by the defendant, and that the court had reason to doubt the truth and validity of the plea of guilty.

What was the duty of the court under such circumstances? We think its duty was to have ordered a plea of not guilty entered and to have placed this man upon trial before a jury. If this was the duty of the court, it is unnecessary to say that the failure to do so was prejudicial error. Counsel for appellant insist, in their brief, that if this court should hold that the

rights of the defendant were not fully protected by the court, that the sentence of the lower court should not only be vacated, but that the defendant should be discharged; and as authority for this proposition they cite the cases of *Edwards* v. *People,* 39 Mich. 760; *Clark* v. *People,* 44 Mich. 308, and *O'Hara* v. *People, supra.*

That such was the ruling of the court in those cases cannot be questioned; but we think that the rule laid down in those cases as to the discharge of the defendant is no longer authority in this State, and it has been substantially overruled and abrogated in the case of *People* v. *Farrell,* 146 Mich. 264. In that case the defendant was informed against for murder. On a trial in the circuit court he was convicted of manslaughter, and on an appeal to this court the judgment was reversed and a new trial granted. On the second trial in the circuit court the defendant was convicted of murder in the first degree and sentenced to imprisonment for life, and an appeal was again taken to this court. It was claimed on the appeal that the sentence was void, for the reason that the prior conviction for manslaughter operated as an acquittal on the charge of murder in the first and second degrees; and, the sentence being irregular, that the court had no authority to grant a new trial, or remand the case for a second sentence. Three of the Justices of this court there held that the judgment should be set aside and a new trial ordered. In that case (to an examination of which we invite attention), it was held that the sentence was erroneous, and that the case should be remanded to the trial court to sentence the defendant for the crime of manslaughter.

We also invite attention to the case of *People* v. *Scofield,* 142 Mich. 221. In that case there was a reversal and a new trial ordered. Justice HOOKER, in speaking for the court, said on page 224:

209—Mich.—15.

"Defendant's counsel ask his discharge, upon the theory that he was erroneously sentenced, and for that reason the error is in the judgment and not in the conviction. See *Elliott* v. *People*, 13 Mich. 365; *O'Neil* v. *People*, 15 Mich. 275; *Wilson* v. *People*, 24 Mich. 410. This conviction is not valid, and the sentence erroneous within the principle of those cases. If it be established that the conviction was of the offense charged in the information, as defendant's counsel insist that it was, the sentence was one that the law authorizes, and it can only be avoided in this case by setting aside the conviction as erroneous. In such case, a new trial is to be ordered as in ordinary cases of reversal."

In the instant case the error was in the conviction. If defendant had been rightfully convicted, the sentence was one that the law authorized. In other words, this court, in the recent cases, has held that it will examine the record and ascertain where, and in what part of the proceedings the error occurred, and if possible rectify that error. If we are correct in what we have said, the error here was in the conviction of the defendant upon his plea of guilty, and not in an excessive sentence. The case should, therefore, in our judgment, go back to the circuit court for a re-arraignment of the defendant, and in case of a plea of not guilty, or of his standing mute, that a jury trial be ordered in the case. See, also, *In re Vitali*, 153 Mich. 514. The conviction of the defendant is therefore set aside.

The judgment of the court below is reversed, and a new trial granted. The defendant will be remanded to the custody of the sheriff of Ionia county to be dealt with as the law directs.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.