PEOPLE *v.* MERHIGE.

1. CRIMINAL LAW — PLEA OF GUILTY — INVESTIGATION BY TRIAL
JUDGE AFTER PLEA.

The language of 3 Comp. Laws 1915, § 15830, providing
"That whenever any person shall plead guilty to an in-
formation filed against him·in any circuit court, it shall
be the duty of the judge of such court, before pronounc-
ing judgment or sentence upon such plea, to become satis-
'fied," by an investigation, that said plea was made freely
and understandingly, construed, and *held*, to mean that
said investigation shall be made after a plea of guilty,
since "whenever" is equivalent to "as soon as," "at what-
ever time," and synonymous with, or equivalent to, the
words "upon which," "where," "in case," and "if."

2. SAME—PLEA OF GUILTY.

In a prosecution for robbery, on arraignment of defendant,
the proceedings had in open court examined, and *held*,
not to amount to a plea of guilty.

3. SAME—CRIME—ACTS DONE UNDER COMPULSION.

An act which would otherwise constitute a crime may
be excused on the ground that it was done under com-
pulsion or duress, but the compulsion must be present,
imminent, and impending, and of such a nature as to
induce a well-grounded apprehension of death or serious
bodily harm if the act is not done, a threat of future
injury not being enough, and such compulsion must have
arisen without the negligence or fault of the person who
insists upon it as a defense.

4. SAME—STATEMENT OF PROSECUTOR IMPROPER.

The statement by the prosecutor, on the arraignment of sev-
eral persons charged with robbery, that "I understand
some .of you have taken a bigger part in it than others,
but under the law of this State to aid and assist in the
crime, and all who aid and assist are responsible with
the principal," *held*, improper.

5. SAME—EXAMINATION OF ACCUSED—CONDUCT OF PROSECUTOR.

An examination of defendant in open court, by the prose-

cutor, while a plea of not guilty was standing upon the records of the court, *held*, reversible error.

6. SAME—PLEA OF GUILTY—NOT VOLUNTARY WHERE NOT FULLY ADVISED.

In said prosecution, where defendant had not had the aid of counsel, and had not been advised of the extent or nature of the punishment that might be inflicted, he could not be said to have voluntarily entered his plea of guilty with full and perfect knowledge of the consequences of such plea.

7. SAME—NEW TRIAL—SETTING ASIDE PLEA OF GUILTY.

Upon the record in this case, the refusal of the trial judge to grant defendant's motion to set aside the plea of guilty, the judgment and sentence, *held*, reversible error.

Error to superior court of Grand Rapids; Dunham (Major L.), J. Submitted October 14, 1920. (Docket No. 106.) Decided December 21, 1920.

Jad Merhige was convicted of robbery, and sentenced to imprisonment for life in the State prison at Jackson. Reversed.

*Fred A. Maynard*, for appellant.

*Cornelius Hoffius*, Prosecuting Attorney (*Fred P. Geib*, of counsel), for the people.

STONE, J. This case is before this court upon writ of error to the superior court of Grand Rapids, where the defendant was convicted upon his alleged plea of guilty of the robbery of a bank, being then and there armed with a revolver, and was sentenced to life imprisonment in the State prison at Jackson. The defendant was born in Syria and is said to be 27 years of age. In July, 1919, he, with his family, moved from New York to Detroit, and he there engaged in the business of driving an automobile for hire. He owned his car and operated it as a public taxi. It is

claimed by the defendant that on September 16, 1919, he was approached by certain parties in Detroit, who were entire strangers to him, who engaged his car and himself as driver to drive for them in the country at the rate of $3 per hour; that he knew nothing of the business of these men, nor where they were going; that there were originally 6 in the party that left Detroit, including himself; that they went to Grand Rapids; that on September 19, 1919, three of these men, namely, Ally Hamden, Tofi Leon and Tony Randazzo, being armed with revolvers, feloniously entered the Grandville avenue branch of the Grand Rapids Savings Bank and there stole and carried away money and personal property consisting of bonds and other securities to the amount of $6,895.50, and one of the customers of the bank was then and there shot and killed by one of the robbers. Defendant claims that he had nothing to do with the robbery of the bank, and that he remained all of the time in his automobile. He states in his affidavit in support of his motion to set aside the plea of guilty, and the judgment and sentence, that it was some time after the party left Detroit before he was informed that the destination of his passengers was Grand Rapids, and that it was not until they had stopped at a certain farm house five miles from Grand Rapids that he had reason to believe that they were going to Grand Rapids to commit some crime, which later he discovered was to rob a bank; that all that he did from the time that said passengers disclosed their purpose, was in the actual present fear of his immediate death by their use of revolvers which they had in their possession, and which at times they held at his head; that from the moment of disclosure until after the robbery of the bank he was at all times under the control of one or more of said parties, and that he believed if he made any attempt whatever to escape, or to do anything to

his car by which its usefulness would be impaired, he would pay for the same by his death; that said parties told him after leaving said farm house that he might as well make up his mind, if he hoped to live to return to his wife, to obey orders; that he was told that he had been hired simply and solely for the purpose of driving the car, and he had nothing whatever to do with their business any more than any other taxi driver had with the business of his passengers; that he had been made to believe that said parties had come to the conclusion that it was unsafe to rob said bank, and that they had changed their minds and were going directly back to Detroit; that at no time on the day the bank was robbed was he free to act, as some one or more of them was nearby to carry out their threats if he attempted to do other than as directed; that after the robbery he was ordered by one of the robbers to drive on certain roads which brought them to Saginaw, where the said robbers left him, and for the first time defendant was free to act; that he thereupon returned to his home in Detroit with his car, and, after telling his wife what had happened, went to the police headquarters in Detroit and informed the officials of the facts, and delivered over to them intact the money that he received for his services, which was much less than had been agreed upon; that when he was informed by the Detroit officials that he must go to Grand Rapids he was made to believe that he was going there as a witness and would be used as such; that he had ever since been deprived of his liberty, and that at no time prior to his sentence had he had the aid or assistance of counsel. He further states in said affidavit that when he reached Grand Rapids there was a great crowd of people at the depot, and much excitement, and he feared that the people might take the law into their hands and take his life; that from that time until his sentence he was com-

pletely under restraint and in a great state of nervous excitement, and that he was in that condition when he appeared in court.

Some of these matters or statements are denied by counter affidavits of the officers of the police department of Grand Rapids, and by statements of the trial judge in his opinion overruling the motion. It does appear, however, without contradiction, that such proceedings had been taken at Grand Rapids by the criminal authorities that the defendant, together with Leon and Hamden, was arraigned in the superior court on September 23, 1919, at 3:20 o'clock; that they were all arraigned together and all pleaded not guilty to the information filed against them, and such plea was duly entered in the record. The defendant was then remanded to jail, and on the next day, to wit, September 24th, was again brought into court.

What occurred in open court on September 23d and 24th is best made to appear by the court reporter's transcript which is set forth in the record, and which is stated by the trial judge to be substantially correct. Those proceedings were as follows:

"Grand Rapids, Michigan,
"Tuesday, 3:20 P. M., September 23, 1919.

"*The Court:* Mr. Prosecutor, have you some arraignments?

"*Mr. Hoffius:* I have; Hamden, Leon and Merhige. I will read this information to you. (Reading.) This information, boys, charges you with bank robbery, attempted bank robbery, stealing from a bank, putting the man therein in fear. I understand some of you have taken a bigger part in it than others, but under the law of this State to aid and assist in the crime, and all who aid and assist, are responsible with the principal. To that information how do you plead, guilty or not guilty?

"*Respondent Leon:* Not guilty.

"*Respondent Merhige:* Not guilty.

"*Respondent Hamden:* The same.

*"Mr. Hoffius:* You plead not guilty?
*"Respondent Hamden:* Not guilty."

"Grand Rapids, Michigan,
"Wednesday, 10:30 A. M., September 24, 1919.
"The respondent Ally Hamden was brought into court.

*"Mr. Hoffius:* Do you want to plead?

*"Respondent Hamden:* I plead 'guilty.'

*"The Court:* Under the statute I have to give you a private examination. You step this way. (The court and respondent retired.)

*"The Court:* I understand the other defendants will be brought over. Is Merhige here?

*"Mr. Hoffius:* He is here. Do you say you have had a helping hand in robbing this bank down here on Grandville avenue?

*"Respondent Merhige:* I say I did, unwillingly. I did help in that I drove the car and that I was in their association.

*"The Court:* You were here two or three days before the robbery?

*"Respondent Merhige:* We were here a couple days, your honor.

*"The Court:* Who had charge of the car?

*"Respondent Merhige:* I had charge of the car.

*"The Court:* And you were in the car out in front of the bank?

*"Respondent Merhige:* I was.

*"The Court:* Any one that does anything of that kind is a principal and is guilty. With that explanation and the explanation the prosecutor has given you, do you want to change your plea from not guilty to guilty?

*"Respondent Merhige:* Well, I stated the circumstances of the case.

*"The Court:* No; I ask you—it has been stated to you what constitutes the commission of the offense charged against you, that is, robbing the bank over there, which means—

*"Respondent Merhige:* Helping in it?

*"The Court:* Helping to do it. It does not mean you went in and took the money and brought it out, but if you assisted the others in doing that, then you would

be guilty.   With that explanation, do you want to change your plea from not guilty to guilty?

"*Respondent Merhige:* There is not a shadow of a doubt that I assisted, that I was in the car, and that I was there.

"*The Court:* What has been stated to you is the law. The question is if you want to say that you are guilty or not guilty, that is all.

"*Respondent Merhige:* Well, guilty; I was guilty; I was there; I was in the car.

"*The Court:* And you aided and assisted these men, carrying them backwards and forwards, and holding the car for them, and when they came out drove away?

"*Respondent Merhige:* I did assist, through force.

"*The Court:* Very well.   The statute makes it necessary for me to have a private talk with you after pleading guilty, and I will do that right now.   Step out this way."

It affirmatively appears that when the foregoing proceedings were had in open court the only plea which had been entered by defendant was that of not guilty. At the close of the foregoing colloquy the trial judge had a private interview with the defendant, at the close of which and on said 24th day of September, the record shows that the defendant came into court and withdrew his former plea of not guilty and entered a plea of guilty, whereupon he was remanded for sentence.   He remained in jail until the 26th day of September, 1919, when, as appears by the record, he was sentenced to be confined at hard labor in the State prison at Jackson in solitary confinement for the balance of his natural life.

Although the journal entry shows that the court had become satisfied after such investigation and private examination of the defendant as said court deemed necessary respecting the nature of the case, and the circumstances of such plea, that said plea was made freely and with full knowledge of the accusations and without undue influence, it does appear by the

opinion of the trial judge, in denying the motion, that such plea was entered after the private examination of the defendant, and that such examination was had before any change had been made by the defendant of his plea of not guilty, unless it is to be held that what occurred in open court on September 24th, as above set forth, was substantially a plea of guilty.

On November 26, 1919, a motion was entered to set aside the plea, final judgment and sentence, which motion was supported by the affidavits of the defendant and other witnesses. Many grounds are stated in support of the motion, some of which we do not find it necessary to insert here because they are substantially repetitions of other grounds. The following reasons appear:

(1) Because it appears on the face of the records of said court, that defendant, on Tuesday, the 23d day of September, 1919, pleaded not guilty to the information herein.

(2) Because, notwithstanding, it appears of record that defendant on the following day, viz., September 24, 1919, withdrew his former plea of not guilty and entered a plea of guilty, he did not in truth, in fact, and in law do so, which clearly appears in the proceedings had in and before said court.

(3) Because said sentence and judgment were the result of a clear error of law on the part of the court in construing what was said by the defendant as a full, free, deliberate and unreserved plea of guilty to said information.

(6) Because the defendant was misled by the court, when he was told by it that he was guilty in law, if he assisted these men, carrying them backwards and forwards and holding the car for them, and when they came out in driving them away, by not informing him at the same time that, of course, such acts of his must have been free, voluntary, and without restraint of any kind.

(7) Because the court erred in accepting defendant's plea and in sentencing him to prison, when it was told by defendant that all that he did in helping the

others was solely because he was compelled so to do by force.

(9) Because the court erred when it was informed by defendant that he had helped the others, solely because of force, in not advising him that his plea should be not guilty, or in failing to instruct the clerk of the court to enter a plea of not guilty.

(10) Because the court erred in sentencing the defendant on the theory that he had pleaded guilty to the information.

(11) Because the defendant is entitled to have his guilt or innocence passed upon by an impartial jury.

We state the fifth ground separately, as it refers to another subject:

(5) Because it affirmatively appears in said proceedings had prior to plea, sentence and judgment, that defendant did not have the assistance of an attorney at law, and the situation which he was in was such that he could not freely or intelligently act without such assistance.

The said motion was overruled and exceptions duly filed. By proper assignments of error the same points are urged as in the motion, together with the claim that the court erred in refusing to grant defendant's motion.

In this court it was urged with great earnestness by counsel for defendant that the statute relating to the duty of a presiding judge, when a defendant pleads guilty, was not complied with in letter or spirit. That statute, enacted in 1875, has been considered by this court in more than a score of cases, as will appear by reference to the compiler's note to the statute, which is section 15830, 3 Comp. Laws 1915. We recently considered that statute in the case of *People* v. *Utter*, 209 Mich. 214.

The language of the statute in question is very plain in its provisions. It provides:

"That whenever any person shall plead guilty to an

212—Mich.—39.

information filed against him in any circuit court it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied," etc.

At what stage in the progress of a criminal case may the judge make such investigation? Manifestly, the statute intends that such investigation shall be made *after* a plea of guilty. "Whenever" is equivalent to "as soon as," "at whatever time." The word is synonymous with, or equivalent to, the words "upon which," "where," "in case" and "if." In this sense it is a word of condition or contingency. In construing statutes the word is frequently an equivalent to "if." 40 Cyc. p. 920 *et seq.*

A careful reading of the proceedings had in open court on the 24th day of September, as above set forth (which the court certifies are substantially correct, although not containing all that was said, yet correct as far as set forth), satisfies us that what occurred in open court on that occasion did not amount to a plea of guilty by the defendant. It is not a question merely when the plea of guilty was entered of record, but what was the condition of the case when the court and prosecuting attorney entered upon the colloquy there set forth. The answers of the defendant were so qualified and limited as to lead us to the opinion that what there took place was not the equivalent of, and did not amount to, a plea of guilty. Manifestly, if this defendant was acting under duress at the time, and prior to the robbery, such duress must affect to a greater or less degree his responsibility in the law for his acts. Counsel for the people cite the correct rule in their brief, which is found in 16 Corpus Juris at p. 91, and is as follows:

"An act which would otherwise constitute a crime may also be excused on the ground that it was done under compulsion or duress. The compulsion which will excuse a criminal act, however, must be present,

imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough. Such compulsion must have arisen without the negligence or fault of the person who insists upon it as a defense."

The proceedings in open court, both on the 23d and 24th of September, were very unusual and anomalous. The statement made by the prosecutor on the 23d of September: "I understand some of you have taken a bigger part in it than others, but under the law of this State to aid and assist in the crime, and all who aid and assist are responsible with the principal," was very unusual, and, we think, improper language to be used by a public prosecutor in making arraignment in a court of justice. Equally unusual were the proceedings on the 24th. Bearing in mind that at that time the plea of not guilty was standing upon the records of the court, what right the prosecutor had to make any examination of the defendant in open court it is difficult to conceive, and yet the record shows that he started the investigation by this language: "Do you say you had a helping hand in robbing this bank down here on Grandville avenue?" We desist from further discussion of this matter by saying that, in our opinion, the proceeding was prejudicial to the rights of the defendant, and what there occurred did not amount to an unqualified plea of guilty, and gave the court no power or authority to make the further examination which the record says he did make, all of which occurred before the plea of guilty was entered. We think that what occurred in open court on September 24th constituted reversible error.

Whether the defendant was responsible for his conduct on September 19th, and whether his actions on that occasion were voluntary, would be a fair question for a jury under all the circumstances of the case.

It should be borne in mind that during the entire proceeding defendant was without counsel; was, so far as this record shows, among entire strangers, and laboring under much excitement. Without passing on the question as to whether counsel had been waived by him, the fact, nevertheless, appears that he did not have, and had not had, at that time, the aid of counsel; and had not been advised of the extent or nature of the punishment that might be inflicted. All these things have a bearing upon the question whether defendant's rights were properly saved and guarded in the proceeding. Under such circumstances it cannot be said that defendant voluntarily entered his plea of guilty, with full and perfect knowledge of the consequences of such a plea. Many authorities might be cited upon this subject. One of the latest cases to which our attention has been called is that of *Batchelor* v. *State* (Ind.), decided January 30, 1920, and reported in 125 N. E. at p. 773, where there will be found a collection of authorities.

There is much force in the claim that the defendant did not fully comprehend the serious consequences of the plea of guilty, as it appears by the affidavits of the police officers that defendant appeared surprised when he received a life sentence. Upon the subject of voluntary pleas, the applicable rule is well stated by the supreme court of Florida in the case of *Pope* v. *State*, 56 Fla. 81 (47 South. 487, 16 Ann. Cas. 972), as follows:

"In a criminal prosecution a defendant has a right to plead guilty; and the effect of such a plea is to authorize the imposition of the sentence prescribed by law upon a verdict of guilty of the crime sufficiently charged in the indictment or information.

"The plea should be entirely voluntary by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance. 12 Cyc. p. 353. While

the trial court may exercise discretion in permitting, or refusing to permit a plea of guilty to be withdrawn for the purpose of pleading not guilty, yet such discretion is subject to review by an appellate court. A defendant should be permitted to withdraw a plea of guilty given unadvisedly, when application therefor is made in good faith, and sustained by proofs, and proper offer is made to go to trial on a plea of not guilty.

"The law favors trials on the merits; and if the discretion of the trial court is abused in denying leave to withdraw a plea of guilty, and to go to trial on the merits, the appellate court may interfere. See *Krolage* v. *People,* 224 Ill. 456 (79 N. E. 570); *Gardner* v. *State,* 106 Ill. 76."

See note to *Krolage Case* in 8 Ann. Cas. 237; also *State* v. *Hill,* 81 W. Va. 676 (95 S. E. 21, 6 A. L. R. 687).

See, also, cases cited in note to *Pope* v. *State* to be found in 16 Ann. Cas. 973; *Little* v. *Commonwealth,* 142 Ky. 92 (133 S. W. 1149, 34 L. R. A. [N. S.] 257, and note, Ann. Cas. 1912D, 241).

We are of the opinion, upon this record, that the motion of the defendant to set aside the plea of guilty, the judgment and sentence, should have been granted, and that to refuse the same was prejudicial to the defendant, and was reversible error.

The trial judge states in his opinion denying the motion that every opportunity was given defendant to have counsel of his own choice, and that he was told that the court would appoint such counsel at the expense of the county, but that he made no request therefor. We do not find it necessary to pass upon the question whether counsel was waived or not by the defendant. The fact remains, however, that defendant was subjected to a searching examination by the public prosecutor and the court, at a time when the only plea interposed was that of not guilty, without

the presence or aid of counsel to advise him of his legal rights.

For the errors pointed out the plea of guilty and the judgment and sentence are set aside and the case remanded to the superior court for further proceedings. The defendant should be rearraigned, and in case a plea of not guilty is entered, or if the defendant stands mute, he should be given a jury trial. The judgment below is reversed; and it appearing that defendant is at large on bail, conditioned, among other things, that he shall in all respects comply with the terms and conditions of any order which this court may make in the premises, an order will be entered that said defendant personally appear before said superior court of Grand Rapids on the 10th day of January, 1921, there to abide the order of said court, and to be dealt with according to law.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.