*In re* VALLE.

1. EVIDENCE—JUDICIAL NOTICE—PUNISHMENT—PLEA OF GUILTY OF LESSER OFFENSE.

The Supreme Court takes judicial notice of the prevalence of the practice of the holding of conversations between the attorney for a defendant, charged with crime, and the prosecuting attorney relative to punishment in the event the accused pleads guilty to a less serious offense.

2. CRIMINAL LAW—ACCEPTANCE OF PLEA OF GUILTY.

A plea of guilty in a criminal case must be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance.

3. SAME—PROMISE OF LENIENCY—PLEA OF GUILTY.

The standard by which it is determined whether a promise of leniency in return for a plea of guilty is made is determined, not by whether it is established beyond any doubt whatever in the mind of one learned in the law and acquainted with judicial administration, but rather by whether there has been a statement by either the prosecutor or judge that may fairly be so interpreted by the defendant involved.

4. SAME—PLEA OF GUILTY—PROMISE OF LENIENCY—DUE PROCESS.

Plea of guilty to charge of breaking and entering is set aside, where made after defendant's appointed counsel had stated in open court that the prosecutor would not oppose "probation with a 6-months' jail term", which was not followed by clarification by the prosecutor or examination of defendant in detail by the judge before sentencing defendant to a term of 5–15 years, there being a violation of due process.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence § 16 *et seq.*
[2, 3] 14 Am Jur, Criminal Law § 270.
[4] 14 Am Jur, Criminal Law § 273.
    12 Am Jur, Constitutional Law § 567 *et seq.*

Habeas corpus with ancillary writ of certiorari to Jackson circuit court by Gabriel A. Valle to obtain release from State Prison of Southern Michigan. Submitted June 16, 1961. (Calendar No. 49,219.) Conviction and sentence set aside and petitioner remanded to custody for further proceedings September 23, 1961.

*Gabriel A. Valle, in propria persona.*

*Paul L. Adams,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, *Perry A. Maynard,* Assistant Attorney General, and *James G. Fleming,* Prosecuting Attorney, for the people.

TALBOT SMITH, J. Petitioner Gabriel A. Valle (hereinafter referred to as the defendant) was estranged from his wife and children. His story upon arraignment (no trial was had) was that his wife had deserted their children and that "the court in Gary took them away from me and stuck them in a foster home." He did not know where they were and he wanted to talk with his wife. The trouble was that he did not know where she was, either, but he believed that her father, Mr. Carl Winklepleck, knew.

Defendant accordingly went to the father-in-law's home but instead of approaching him directly with his inquiry, he unhooked the window to the coalbin, entered, and waited for him. To the court's inquiry "Did you have to break into the house to talk with your wife?" Defendant replied, "Yes, sir. * * * Because she called the cops on me otherwise." The court, at this point, refused to accept defendant's plea of guilty to the count of breaking and entering (previously tendered) and remanded defendant to the sheriff's custody to await trial.

After a short recess the court again brought defendant before it and spoke to him as follows:

"Well now, Valle, the prosecuting attorney and your attorney have talked with me since you were here before me and they say that you want to still enter a plea of guilty and tell me what happened here."

It then developed, upon additional questioning by the court, that defendant, prior to his entry into the coal bin, had armed himself with a .22 rifle, a .38 revolver, a knife, a blackjack, and handcuffs. The purpose of the arsenal was never made clear to the court, and we are not sure, upon the record, just how clear to the defendant himself. In answer to the court's question "What were you going to do with all those things?", he first replied "I was drinking the night before." At another point he said that he was going "to scare him." At still another "I was going to use them." And at another "I don't know. I don't know what I would have done with them." At any rate, the use of weapons proved to be unnecessary. The father-in-law "willingly" took defendant to his daughter for their talk. The conversation, however, was not lengthy. When opportunity offered itself, Mr. Winklepleck, as defendant put it, "called the cops on me, so I only talked to her a couple of seconds."

As a result of the above, defendant was arraigned on an information charging him with the offense of kidnapping (count 1), to which was later added a second count, breaking and entering in the nighttime. With respect to count 2, defendant, through his assigned attorney, advised the court on April 25th that he wished to plead guilty. The court, however, upon examination into the facts of the case, some of which are set out above, refused to accept the plea "until [he] found out more about it." Subsequently, on May 8, 1958, the defendant appeared before another judge of the same circuit, whereupon

the following statement was made in open court by defendant's counsel:

"If the court please, I was appointed to represent Gabriel Valle, the defendant herein. He was originally charged in the first information with kidnapping, and a second count has been added to the information, of breaking and entering with intent to commit a felony in the premises.

"The defendant has to my knowledge no previous record but this is largely over a marital difficulty. His wife was away. He wanted to talk with her and entreat her to return to him, and he wanted to enlist the aid of his father-in-law. That is the home into which he broke into to talk to his father-in-law.

"He thought if he went and knocked on the door they wouldn't see him; and it is not the ordinary type of kidnapping case. It is largely over marital difficulty.

"I have talked with the prosecuting attorney who informs me that under the circumstances he would not be opposed to probation with a 6-months' jail term; and the defendant wishes to enter a plea of guilty to the second count."

The defendant at this hearing thereafter again advised the court, through counsel, that he wished to plead guilty to the second count. After examination, as related in part above, the court accepted the guilty plea.

When sentence was imposed, however, it was not a jail term and probation, but imprisonment for a term of 5 to 15 years. Defendant comes to us on a writ of habeas corpus. It is his argument that he was induced to enter his guilty plea to the second count in the information by reason of alleged promises as to his sentence, evidenced by the statement of his counsel in open court as hereinabove quoted. The prosecutor asserts in reply that the circuit judge "minutely questioned the defendant thereafter as

to his plea being free and voluntary and the facts and circumstances surrounding his plea as well as the facts and circumstances of the crimes for which the defendant was charged", and, in addition:

"That it is emphatically denied by the people through the prosecutor's office that any promise of sentence was ever made to the defendant or his attorney and that again this statement made by the defendant's attorney in open court was but self-serving, not referred to by the defendant as the basis for his plea, not corroborated in any respect or detail and was not a promise of any preferred treatment for the defendant but at the most was a statement made by the defendant's attorney that the prosecutor would not oppose that sentence should the court see fit to grant it."

Certain distinctions must be made in order that our words be not misconstrued in the dissimilar situations so often asserted to us. This is not the usual case of an asserted plea bargain, resting almost entirely upon the testimony of the defendant, often asserted long after the event, utterly lacking in reasonable corroboration. Here the crucial point is a statement made in open court, by an officer thereof. The defendant's counsel, he himself states, has "talked with" the prosecutor, and with respect to punishment. We take judicial notice of the prevalence of the practice. One authority, in fact, points out that:

"Many pleas of guilty are obtained through the out-of-court action of the prosecuting attorney. 'The first and most favored way of securing a plea is to permit the defendant to plead guilty to a charge less serious than the one originally made in the indictment or information. The second is to induce a plea of guilty by the promise of a suspended sentence.'

"The extreme importance of the plea of guilty may be seen from the fact that in some districts 95% of all convictions are on plea of guilty. The average throughout the country is around 85%. 'The vast majority of all persons who are punished for serious criminal offenses have filed pleas of guilty.' It follows that the prosecuting attorney is, together with the magistrate, who eliminates more than half of the cases at preliminary examination, the most important official as practically judged by the disposition of the greater number of cases. A practice has grown up that is so common that it forms the chief technique employed; namely, waiver of the major felony charge and acceptance of a plea of guilty of a lesser offense. It is not improbable that, in the majority of cases in which defendants charged with felonies have pleaded guilty of misdemeanors, they have in fact committed more serious crimes."[1]

There is no doubt, of course, that where the prosecutor has in fact made a bargain as to the plea, on the faith of which the defendant pleads, the courts will permit the withdrawal of the plea if the bargain is not kept. So held the sixth circuit[2] quoting with approval from a Georgia case, in the following terms:

"It was discretionary with the trial judge whether he would receive the plea of guilty at all. If he knew that it was entered under the mistaken belief, engendered by an agreement of State's counsel, that the punishment would be less than the maximum, the plea ought not to have been received until the accused had been admonished that the judge would not be bound by any such agreement. Of course, in theory, the accused knew that this was true; but if they, in fact, honestly thought the agreement would

---

[1] Orfield, Criminal Procedure from Arrest to Appeal, Judicial Administration Series, published under the auspices of the National Conference of Judicial Councils, New York University Press (1947), pp 297, 298. (Footnotes omitted.)

[2] *Ward* v. *United States* (CCA 6, 1940), 116 F2d 135, 137.

be carried out, then they ought to have relief from the plea. If the State is not bound by the agreement its counsel made, then the accused ought not to be held to their waiver, made on the faith of such agreement."[3]

To the same effect is our Michigan law:

"In order to be accepted, a plea of guilty in a criminal case must be entirely voluntary, by one competent to know the consequences, and, should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance."[4]

Here, however, the people deny that any such bargain was made. The language heretofore quoted, namely, "I have talked with the prosecuting attorney who informs me that under the circumstances he would not be opposed to probation with a 6-months' jail term; and the defendant wishes to enter a plea of guilty to the second count" is, obviously, susceptible of various interpretations. It is true that an astute lawyer would realize, as the people point out, that the prosecutor could not bind the judge, and, indeed, that the prosecutor's nonopposition to jail-plus-probation is not the same as his approval or recommendation thereof. But the inquiry in these circumstances is not what an astute lawyer would take as the meaning of the words used. In this situation we do not require that the promise of leniency be established beyond any doubt whatever, or even beyond any reasonable doubt in the mind of one learned in the law and acquainted with judicial administration. The requirement is far less stringent: If the evidence establishes that the prosecutor or the judge[5] has made a statement which fairly inter-

---

[3] *Griffin* v. *State* (1913), 12 Ga App 615, 630 (77 SE 1080, 1087); Anno (1943), 146 ALR 1430, 1433.
[4] 1 Gillespie, Michigan Criminal Law and Procedure (2d ed 1953), § 323, citing *People* v. *Merhige*, 212 Mich 601.
[5] *United States* v. *Lias* (CCA 4, 1949), 173 F2d 685, 688.

preted by the defendant (in our case of foreign extraction and with only an eighth-grade education, presumably in court for the first time) is a promise of leniency, and the assurance is unfulfilled, the plea may be withdrawn and the case proceed to trial.

Here the agreement is disputed by the people and normally it would require the most cogent of proofs to persuade us that, under such circumstances, and without more, such an agreement was in fact made. The oath of public officials as to the performance of their sworn duties is, it has been our experience, so consistently in accord with the fact of such performance that only in the most unusual circumstances would we be persuaded otherwise. In this case, however, enough was said by defendant's counsel in open court to warrant a fair and reasonable conclusion by one of defendant's education, obvious mentality, and lack of familiarity with court procedures, that a plea bargain had in fact been made, in reliance upon which he was pleading guilty as charged. It was the duty of the prosecutor then and there to clarify the matter, in addition to which it was the court's duty to investigate the basis for defense counsel's statement and, particularly, whether or not the defendant was pleading guilty in reliance upon any agreement believed by him to be expressed thereby. This duty was not discharged to any degree by the prosecutor and, if at all by the judge, only by his employment, in later interrogation, of the routine questions: Do you understand the charge; Have there been any promises made; and are you pleading freely and voluntarily? An exploration in detail of the statement defendant's counsel had coupled with the plea of guilty, should have been made prior to its acceptance, in order to insure that the plea accepted not have resulted from mistake or ignorance. Self-conviction thus obtained

may be as misleading, with respect to real evidence of guilt, as a coerced confession, and is equally violative of due process.

It appearing that the defendant is entitled to release under the sentence he is now serving, the conviction and sentence are set aside and the petitioner is remanded to the custody of the sheriff of Jackson county for further proceedings.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.