Joseph E. **MULLREED**, Petitioner-
Appellant,

v.

George A. **KROPP**, Warden, Respondent-
Appellee.

No. 19650.

United States Court of Appeals,
Sixth Circuit.

April 16, 1970.

As Amended May 4, 1970.

David W. Jones (court appointed) Cincinnati, Ohio, for petitioner-appellant.

Stewart H. Freeman, Lansing, Mich., for respondent-appellee; Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Stewart H. Freeman, Asst. Atty. Gen., Lansing, Mich., on brief.

Before PHILLIPS, Chief Judge, and PECK and BROOKS, Circuit Judges.

PHILLIPS, Chief Judge.

This is a habeas corpus case in which petitioner appeals the denial of the writ.

The essential facts are not disputed. In June 1954 Joseph E. Mullreed and a friend, Leland Passow, were drinking in a tavern near Grass Lake, Michigan. After several drinks Mullreed and a female bar attendant played a game of shuffleboard. Sometime after that it is alleged that the attendant was struck with a chair and that Mullreed took $40 from the cash register. About a week later Mullreed and Passow were arraigned in the Jackson County Circuit Court of Michigan on an information charging them with "robbery armed," which in Michigan carries a sentence up to and including life imprisonment. At the arraignment both Mullreed and Passow informed the Court that they did not have legal counsel and requested appointed counsel. The Court inquired into their financial circumstances and took the request under consideration. Thereafter both men stood mute without counsel and the Court entered pleas of not guilty for them.

A week later both of the defendants had an "interview" with the State Prosecutor, at which time the Prosecutor informed them that he had some doubts as to whether a chair would constitute a dangerous weapon for purposes of the armed robbery statute. For that reason he said he was adding a second count to the information, a lesser offense, "robbery unarmed." After explaining this charge and the penalties, the Prosecutor told both defendants that there would be no jury in the Jackson County Circuit Court for three months; that unless defendants could furnish bail they would have to remain in jail until then and would be prosecuted on the "robbery armed" count with the second count added.

Both men agreed to plead guilty to "robbery unarmed." When taken before the Court Passow renounced his decision. He later obtained counsel, went before a different judge and received a sixty

day sentence. Mullreed, however, stuck by his agreement and pleaded guilty. The plea was accepted by the Court, and he was sentenced to serve ten to fifteen years in the state prison.

To recapitulate: The information consisted of two counts: count one, robbery armed; and count two, robbery unarmed. As to the first count Mullreed stood mute and demanded counsel. The Court entered a not guilty plea on this count and said it would consider the demand for counsel. As to the second count, which was a lesser offense, Mullreed entered a plea of guilty. At the time Mullreed was convicted of unarmed robbery on his plea of guilty to that offense, his plea of not guilty to armed robbery remained in effect and his demand for counsel remained unsatisfied. The plea of not guilty to armed robbery had put the first count at issue prior to his conviction on the second count.

Mullreed filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Michigan. He urged that he was deprived of his liberty without due process of law because he had been sentenced in the State court after having been denied the assistance of counsel. In Mullreed v. Bannan, 137 F.Supp. 533 (E.D.Mich.), the late District Judge Frank A. Picard found that Mullreed was entitled to his freedom on the grounds urged and granted his petition. Pursuant to the writ Mullreed was released from prison on January 20, 1956. Immediately he was arrested by the State police and on January 31 was bound over to the Jackson County Circuit Court for arraignment on the charge of "robbery armed," that is, the first count in the original information. He was tried on March 7, 1956, before a jury which returned a verdict of guilty. This time Mullreed was sentenced to serve fifteen to thirty years in the State prison.

From the date of his conviction to the filing of the petition involved in the present case, Mullreed has waged a continuous battle in the State courts, often without legal assistance, and with no suc-

cess. He has made the following efforts: a motion for a new trial, an amended motion for a new trial, a petition for writ of habeas corpus, which was denied by the Supreme Court of Michigan, a motion to vacate judgment filed in the State trial court, and an application for leave to file a delayed appeal. One of the grounds for delayed appeal was a claim of double jeopardy. The Supreme Court of Michigan denied the application for delayed appeal.

Upon the failure of his State court efforts, Mullreed on June 14, 1967, turned to the federal courts and, acting *in propria persona,* filed the petition in the instant proceeding. He alleged that his conviction for armed robbery was a violation of the double jeopardy clause of the Fifth Amendment of the Constitution of the United States. The District Court held that Mullreed was never in jeopardy on the armed robbery charge nor was he acquitted of it by the court's acceptance of his plea of guilty to the unarmed robbery charge, and for that reason denied his petition. Petitioner appeals.

We reverse.

The issue raised by this appeal is whether, consistent with the Constitutional prohibition of double jeopardy, a defendant who originally is charged in a two count information, and who pleads guilty to the lesser count, may be retried and sentenced on the greater count, after he has successfully overturned his conviction on the count to which he pleaded guilty.

I.

The Fifth Amendment's prohibition of double jeopardy applies to the States through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. And "the same constitutional standards apply against both the State and Federal Governments." Benton v. Maryland, *supra* at 795, 89 S.Ct. at 2063. Hence decisions interpreting and applying the standard are applicable to the states, though they were rendered prior to *Ben-*

*ton.* See Malloy v. Hogan, 378 U.S. 1 at 11, 84 S.Ct. 148, 12 L.Ed.2d 653.

■ Since this case was "final"[1] before the *Benton* rule, was announced, we face a threshold inquiry as to whether *Benton* applies retroactively to this case. We think it does.

■ The Supreme Court said in Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601: "[T]he Constitution neither prohibits nor requires retrospective effect." "Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective." Id. at 628, 85 S.Ct. at 1737. The Court "must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Id. at 629, 85 S.Ct. at 1738. Applying these criteria to the instant case we look to the history and purpose of the *Benton* rule; any reliance placed by the States upon the overruled case of Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288; and the effect on the administration of justice of a retrospective application of *Benton.* Johnson v. New Jersey, 384 U.S. 719, 727, 86 S.Ct. 1772, 16 L. Ed.2d 882; Tehan v. United States ex rel. Shott, 382 U.S. 406, 419, 86 S.Ct. 459, 15 L.Ed.2d 453; Linkletter v. Walker, *supra,* 381 U.S. at 636, 85 S.Ct. 1731.[2]

The history and purpose of the rule against double jeopardy was stated in *Benton, supra,* 395 U.S. 784 at 795–796, 89 S.Ct. at 2063 as follows:

"Its origins can be traced to Greek and Roman times, and it became es-

tablished in the common law of England long before this Nation's independence. See Bartkus v. Illinois, 359 U.S. 121, 151–155, 79 S.Ct. 676, 697, 3 L.Ed.2d 684 (1959) (Black, J., dissenting). As with many other elements of the common law, it was carried into the jurisprudence of this Country through the medium of Blackstone, who codified the doctrine in his Commentaries. '[T]he plea of *autrefoits acquit,* or a former acquittal,' he wrote, 'is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.' Today, every State incorporates some form of the prohibition in its constitution or common law. As this Court put it in Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L. Ed.2d 199 (1957), '[t]he underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' This underlying notion has from the very beginning been part of our constitutional tradition." (Footnotes omitted.)

Every state has some form of the prohibition against double jeopardy.[3] It

---

1. See the standard of finality applied in Linkletter v. Walker, 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 14 L.Ed.2d 601. We apply this standard here.

2. See other decisions elaborating upon or applying these criteria: Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed. 647; Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253; Desist v. United States, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248; Fuller v.

Alaska, 393 U.S. 81; Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L. Ed.2d 508; McConnell v. Rhay, 393 U.S. 2, 3, 89 S.Ct. 32, 21 L.Ed.2d 2; Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100; Witherspoon v. Illinois, 391 U.S. 510, 523, n. 2, 88 S.Ct. 1770, 20 L.Ed.2d 776; Stovall v. Denno, 388 U.S 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

3. See, ALI, Administration of the Criminal Law: Double Jeopardy, 56–59 (Tent.

can hardly be urged that great reliance was placed on the inapplicability of the Federal prohibition to the States, as announced by *Palko*. Indeed that decision rendered State protections the more important. In view of these facts we think an application of *Benton* here does not pose the problems for the administration of justice that has concerned the Supreme Court in its decisions which deny retroactive effect to some of the rules announced. By way of emphasis we note that in cases in which a rule has been permitted retroactive effect, a primary concern has been the maintenance of the integrity and reliability of the fact-finding process. Linkletter v. Walker, *supra*, 381 U.S. at 639, 85 S.Ct. 1731. See also, e. g. Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed. 2d 508; Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100; Witherspoon v. Illinois, 391 U.S. 510, 523, n. 2, 88 S.Ct. 1770, 20 L.Ed.2d 776; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. We think this case goes beyond the concededly important consideration of the integrity of the truth determining process; it goes to the very quick of a long and cherished heritage in the administration of criminal justice, namely, the State's extended deprivation of liberty as the price for demanding successfully a trial process free of Constitutional infirmity. Therefore we conclude that *Benton* applies retroactively and is controlling here. Booker v. Phillips, 418 F.2d 424 (10th Cir.); Galloway v. Beto, 421 F.2d 284 (5th Cir.). But see *contra*, Spidle v. State, 446 S.W.2d 793 (Mo.Sup.Ct.).

In Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the opinion announced by Mr. Justice Stewart said in footnote 1: "There can be no doubt of the 'retroactivity' of the

Court's decision in Benton v. Maryland. In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, decided the same day as *Benton*, the Court unanimously accorded fully 'retroactive' effect to the *Benton* doctrine."

## II.

Petitioner Mullreed was charged in count one of the information with "robbery armed." As to this count he demanded counsel and stood mute, whereupon the court entered a not guilty plea in his behalf. Under the law of Michigan this procedure was effective to put at issue the question of Mullreed's guilt or innocence of this charge, and but for later proceedings, would have necessitated trial. 25 Mich.Stats.Ann. § 28.-977, M.C.L.A. § 767.37. See also People v. Dochstader, 274 Mich. 238, 264 N.W. 356; People v. Merhige, 212 Mich. 601, 614, 180 N.W. 418, 423; and People v. Franchi, 3 Mich.App. 511, 142 N.W.2d 881.[4]

No trial was conducted on the first count of the information. Instead a second count was added to the information—"robbery unarmed"—and, pursuant to his "agreement" with the Prosecutor, Mullreed entered a plea of guilty to the second count. Here was a deliberate decision on the part of the State not to prosecute on the charge of armed robbery. The Court accepted the plea of guilty to the second count, with the State's concurrence, entered judgment on it, and sentenced Mullreed accordingly. For purposes of the present appeal it was not the conviction on count two which is crucial here; rather it is the State's relinquishment of its rights, or its refusal, to prosecute on count one. Cf. Green v. United States, 355 U.S. 184, 190, n. 11, 78 S.Ct. 221, 2 L.Ed.2d 199.

Draft No. 2 (1932); Notes and Comments, Twice in Jeopardy, 75 Yale L.J. 262 (1965).

4. We take note of decisions which hold that in non-jury trials jeopardy does not attach until the court begins the hearing of

evidence. See, e. g. McCarthy v. Zerbst, 85 F.2d 640 (10th Cir.), cert. denied, 299 U.S. 610, 57 S.Ct. 313, 81 L.Ed. 450. In view of our disposition of this case we do not find it necessary to decide when jeopardy attached as to either of the counts.

As a general rule unarmed robbery is a lesser offense of armed robbery. A defendant charged with the greater offense, armed robbery, may be convicted of the lesser, unarmed robbery, even though it is not charged. This is the law in Michigan. People v. Louzon, 338 Mich. 146, 155, 61 N.W.2d 52, 57; People v. Bradovich, 305 Mich. 329, 9 N.W.2d 560; People v. Rose, 268 Mich. 529, 256 N.W. 536. Thus the conclusion is unavoidable here that, where the charges arise out of the same occurrence, unarmed robbery is a lesser offense and necessarily is included in a charge of armed robbery. This would have been true without the addition of the second count to the information.

### III.

In jury cases it is the well established rule that where a defendant is charged with an offense and is convicted of a lesser offense which necessarily is included in the greater and arises out of the same occurrence, he may not thereafter be tried on the greater. Giles v. United States, 157 F.2d 588, 590 (9th Cir.), cert. denied, 331 U.S. 813, 67 S.Ct. 1197, 91 L.Ed. 1832. See also Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084; Ekberg v. United States, 167 F.2d 380, 386 (1st Cir.). This is the rule in Michigan. People v. Cook, 236 Mich. 333, 210 N.W. 296; People v. Farrell, 146 Mich. 264, 109 N.W. 440. The same double jeopardy principles apply whether the conviction is overturned by direct attack or in collateral proceedings. See United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448; Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872.

Thus we face squarely the question whether there is foundation in law, policy or reason for holding that in a trial to the Court and its acceptance of a guilty plea, the rules are fundamentally different; or whether, for purposes of the issue raised in this case, a conviction and sentence pursuant to a plea of guilty is functionally the equivalent of a jury verdict and thus carries or ought to carry the same legal consequence.

The State concedes in its brief the essential effect of a jury verdict in the following language:

"If this were a proceeding wherein a jury had heard the evidence and made a determination on the question of whether this robber was 'armed' * * *, then it would follow that the State would be bound by that determination. The petitioner could not be prosecuted thereafter on a charge of robbery while 'armed' because the State would be collaterally estopped to challenge the prior determination."

But the State goes on to contend that:

"In this proceeding, however, no jury was empaneled at the first trial. No evidence was presented. If the judge made a factual determination that the defendant committed robbery while unarmed, then such determination must, of necessity, have been based solely upon the petitioner's own assertions to the Court."

Whatever may be said of the nature of the proceedings in the first non-jury trial where the guilty plea was entered, this argument is unpersuasive. The statute specifically enumerates the elements of the offense. One of those elements is that the robbery was accomplished by an unarmed actor. We think the conviction and sentence necessarily show that the trial court found an evidentiary concurrence of the elements required for the conviction, otherwise the conviction on the guilty plea would not have been lawful. See Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. We conclude that the State should not be permitted to urge to the contrary. While it may be argued that no factual determination as to the robbery was made, the guilty plea constituted an admission to the requisite elements. Under the law of Michigan the Court was required to conduct an investigation to determine that the plea was voluntary, not induced by fear, persuasion, misapprehension or ignorance,

and made with an understanding of the consequences. In re Valle, 364 Mich. 471, 110 N.W.2d 673; People v. Merhige, *supra,* 212 Mich. 601, 180 N.W. 418. The rationale of this requirement is that a reasonable ascertainment of the truth of the plea must be made. People v. Barrows, 358 Mich. 267, 272, 99 N.W.2d 347. Michigan statutes and Court rules require that the Court not accept the plea if it has reason to doubt its truth. 25 Mich.Stats.Ann. § 28.1058, M.C.L.A. § 768.35; General Court Rule No. 785.3 (2).

The State further urges that the successful attack on the first conviction utterly vitiated that proceeding, citing United States v. Tateo, *supra,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448, and that the infirmities found affected the integrity of the fact-finding process. Hence it is contended by the State that the first proceeding lacks legal effect for any purpose.

■ We think this argument reflects a misreading of *Tateo.* In that case, prior to appealing, the Government had abandoned the harsher count which had been dismissed in the first proceeding. Although it had been reasserted on the second indictment and dismissed, the only question before the Court was the permissibility of retrial after collateral attack on the convictions upon the counts as to which a guilty plea had been entered and accepted. United States v. Tateo, *supra,* at 464–465, 84 S.Ct. 1587. We read *Tateo* as going no further than to extend the rule of United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, to the situation of a collateral attack. 377 U.S. 465, n. 1, 84 S.Ct. 1587. *Ball* stands for the proposition that retrial on the same counts as to which a conviction is overturned by appeal does not violate double jeopardy.[5]

We agree that in legal effect the first proceeding is a nullity. The consequences of this are to make retrial upon the same count, robbery unarmed, entirely permissible. This is the rule of United States v. Ball, *supra,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, and United States v. Tateo, *supra,* 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448. The same would be true if this had been a jury proceeding subsequently overturned on constitutional grounds. Nonetheless the holding of Green v. United States, *supra,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, is that the conviction on the lesser, or more properly, refusal to convict on the greater, would bar a subsequent prosecution and sentence on the greater charge. See also, United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir.), cert. denied, Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667.

Further, the treating of the first proceeding as a nullity is a legal fiction. That proceeding was effective to deprive him of his liberty until his attack on that conviction was successful. The practical effect of his guilty plea had the same impact upon Mullreed as a jury verdict of guilty would have had. To sustain the State's contention here would be to place a distinction lacking substance upon the foundation of a legal fiction. We are unwilling to adopt this reasoning.

■ Stripped to its essence, we have in this case a situation where the court has sentenced Mullreed on a lesser included offense pursuant to his plea of guilty. The difference between this case and Benton v. Maryland, *supra,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, is that in that case a jury had made an express acquittal. In Green v. United States, *supra,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, the verdict was silent as to the first degree murder charge, upon which the Court held that the defendant had been acquitted. The State urges these as distinctions of constitutional dimensions. We think not. We

---

5. See Note, 77 Harv.L.Rev. 1272, 1283. Of course it is the long standing rule that retrial on the same count does not violate double jeopardy. The present case does not touch upon that point.

hold that the situation here in substance is not distinguishable from *Benton* and *Green*.

Our conclusion in this regard is buttressed by the particular wording of the Michigan statutes involved here. The robbery armed statute provides:

§ 28.797] Robbery; armed. Sec. 529. Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years. (C. L. '48, § 750.529.)

The robbery unarmed statute provides:

§ 28.798 Same; unarmed.] Sec. 530. Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber *not being armed with a dangerous weapon,* shall be guilty of a felony, punishable by imprisonment in the state prison not more than [fifteen] 15 years. (C.L. '48, § 750.-530.) [Emphasis added.]

It is apparent that the conviction on the lesser offense requires an affirmative finding that the actor was not armed with a dangerous weapon. This determination necessarily is inconsistent with a concurrent or subsequent finding that he committed robbery while armed.

■ So long as Mullreed's first conviction of unarmed robbery remained in effect, a plea of former jeopardy would have barred a subsequent prosecution and conviction for armed robbery. After he had attacked successfully his conviction on the lesser charge, the State could have prosecuted him again for unarmed robbery. Instead, after Mullreed had been released on habeas corpus, the State successfully prosecuted him on the greater charge of armed robbery. If this procedure did not violate the double jeopardy clause Mullreed was faced with a choice of remaining in prison on the lesser charge on his plea of guilty entered without representation by counsel, or else challenging that conviction and running the risk of receiving an even harsher penalty for the greater offense of armed robbery. We conclude this to be precisely the "incredible dilemma" which the law avoids placing upon him. Green v. United States, *supra,* 355 U.S. at 193, 78 S.Ct. 221.

We hold that Mullreed's confinement under count one of the information violates the double jeopardy clause of the Fifth Amendment.

■ The record shows that as of April 18, 1968, Mullreed was serving a two and one-half to four year consecutive sentence imposed by the Jackson County Court for escaping prison. This habeas corpus action does not affect that sentence.

The case is remanded to the District Court with instructions to issue at the appropriate time a writ of habeas corpus with respect to Mullreed's 1956 conviction and sentence for armed robbery. Since it appears that Mullreed already has served approximately the maximum sentence for unarmed robbery, we assume that there will be no further State prosecution for that offense.

The appreciation of the Court is expressed to Mr. David W. Jones of the Cincinnati bar who prepared a comprehensive brief and made a capable oral argument as court-appointed attorney for petitioner.