THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NORMAN W. MINUSE, Defendant.

Supreme Court, Special Term, New York County, April 25, 1947.

*Stanley I. La Cov* for defendant.

*Nathaniel L. Goldstein, Attorney-General (Benjamin Zipper* of counsel), for plaintiff.

HAMMER, J. This is an action instituted pursuant to article 23-A of the General Business Law (Martin Act), to permanently enjoin the defendant from engaging in the securities business in the State of New York. The complaint alleges that the defendant has been convicted of violation of the United States Securities Exchange Act of 1934 (U. S. Code, tit. 15, § 78a, as amd.). A copy of the indictment on which the defendant was convicted is annexed to the complaint and incorporated by reference. The complaint further alleges the defendant's conviction and the imposition of a jail sentence. The theory of the complaint is that the conviction for a crime involving the sale of securities in the State of New York constitutes a fraudulent practice as defined by section 352 of the General Business Law.

The answer admits all the material facts, to wit: That the indictment annexed to the complaint was filed against the defendant in the District Court of the United States for the Southern District of New York; that the defendant pleaded " not guilty " to the indictment; the allegations of the indictment; that he stood trial for said indictment; that he was found guilty on said indictment and that he was sentenced to serve a prison term of fifteen months.

The answer further alleges two separate defenses: (1) That the plaintiffs have been guilty of laches and undue delay, and (2) the action is barred by the ten-year period of the Statute of Limitations.

The evidence shows: On October 26, 1938, the defendant together with two other persons was indicted by the Federal Grand Jury on charges of conspiracy to violate clauses (A), (B) and (C) of paragraph (1) of subdivision (a) and paragraph (2) of subdivision (a) of section 9 of the Securities Exchange Act, as amended (U. S. Code, tit. 15, § 78i, subd. [a], par. [1], cls. [A], [B], [C]; subd. [a], par. [2]). This indictment was based on the defendant's manipulations by matched orders or " wash sales " of the Class A Capital Stock of Tasty Yeast,

Inc. Twelve overt acts in furtherance of this conspiracy are set forth in the indictment.

In 1940 after trial in the United States Southern District Court of New York, the defendant Minuse was found guilty as charged. Minuse appealed to the Circuit Court of Appeals which reversed the trial court on or about August 7, 1940 (114 F. 2d 36). The case was again tried in 1943. The defendant Minuse was again found guilty by the jury and was sentenced to fifteen months' imprisonment. Minuse appealed again to the Circuit Court of Appeals in 1944. The conviction was affirmed on or about April 20, 1944 (142 F. 2d 388), wherein the court discussed and dismissed the various defenses and contentions alleged by the defendant. Minuse then proceeded by petition for a writ of certiorari, which was denied October 9, 1944, by the United States Supreme Court (see 323 U. S. 716). Minuse was then sent to the Federal Correction Institution at Danbury, Connecticut, on December 4, 1944, where he served his sentence.

On January 9, 1947, the defendant again returned to the securities business under employment as a salesman wherein he sold securities directly to the public. This action was commenced on or about February 27, 1947.

The facts shown constitute a violation of article 23-A of the General Business Law, and under sections 352 and 353 plaintiff is entitled to the injunctive relief sought unless defendant's pleaded defenses of laches and the bar of the Statute of Limitations prevail (*People* v. *Ruthven,* 160 Misc. 112; *People* v. *Wachtell,* 181 Misc. 1010; *People* v. *Pomeroy,* 269 App. Div. 830; *Local 167* v. *United States,* 291 U. S. 293; *United States* v. *Greater New York Live Poultry Cham. of Com.,* 44 F. 2d 393).

If there be no statutory provision otherwise, a State has legal immunity and is not suable without its consent. If consent be given it can be withdrawn pending suit. No setoff is allowed against it. Neither the doctrine of estoppel nor that of laches applies to a State (*Matter of City of New York,* 127 Misc. 710) except by authority of statute.

Laches is inexcusable delay in asserting a right by reason of which an implied waiver arises from knowledge of existing conditions and acquiescence in them, and the prejudice which would come to another in enforcing such a claim against him. Laches is, nevertheless, distinguishable from technical estoppel, although in each a change of condition must have occurred as to render it inequitable to enforce the claim.

The defense of laches is not available here. This action is not strictly equitable but rather the invocation of the court's injunctive power authorized by statute (General Business Law, art. 23-A), and in any event no facts have been shown from which it could be held delay by plaintiff caused defendant to change his position to his detriment, out of which an estoppel against this action by plaintiff would arise (*Galway* v. *Metropolitan El. R. Co.*, 128 N. Y. 132, 155).

The Statute of Limitations has not run. The complaint is based on defendant's conviction in the Federal District Court. The indictment upon which that conviction rests was filed on October 26, 1938. It was therein charged that the defendant, with the other persons named, " heretofore, to wit, on or about the 15th day of October, 1935, and continuously thereafter up to and including the date of the filing of this indictment, * * * wilfully and knowingly combined, conspired, confederated and agreed together and with each other to commit certain offenses against the United States, to wit, to violate Sections 9 (a) (1) (A), (B), and (C) and 9 (a) (2) of the Securities Exchange Act of 1934, as amended, Section 78i, Title 15, U. S. C. A. etc.'' The defendant gave testimony to show he was not actuated by motives of fraud in the questioned transactions but was duped by others mentioned in the indictment and his conviction resulted only because he was charged with conspiracy.

In *Local 167* v. *United States* (291 U. S. 293, 298, *supra*) it was held: '' The judgment in the criminal case conclusively established in favor of the United States and against those who were found guilty that within the period covered by the indictment the latter were parties to the conspiracy charged. The complaint in this suit includes the allegations on which that prosecution was based. The defendants in this suit who had been there convicted could not require proof of what had been duly adjudged between the parties.''

In *United States* v. *Greater New York Live Poultry Cham. of Com.* (44 F. 2d 393, 394, *supra*) it was held: '' As to the defendants in this suit who were found guilty of the crime charged, the conviction is conclusive of the fact that they were engaged in a conspiracy to restrain trade and did every act which was essential to establish the same.''

Article 23-A of the General Business Law contains no specific provision in respect of limitation of time within which an action thereunder may be brought. Section 357 does provide that '' The provisions of the civil practice act shall apply to all actions brought under this article except as herein otherwise

provided." The pertinent provisions of the Civil Practice Act, if they are applicable here, are the following:

Section 53 of the Civil Practice Act, which reads as follows: " 53. *Limitation where none specially prescribed.* An action, the limitation of which is not specifically prescribed in this article, must be commenced within ten years after the cause of action accrues."

Section 54 of the Civil Practice Act, which reads as follows: " 54. *Certain actions by the people subject to same limitations.* The limitations prescribed in this article for actions other than for the recovery of real property apply alike to actions brought in the name of the people of the State, or for their benefit, and to actions by private persons."

In section 353 of the General Business Law it is provided as follows: " Whenever the attorney-general shall believe from evidence satisfactory to him that any person * * * is engaged or is about to engage in any of the practices or transactions heretofore referred to as and declared to be fraudulent practices, he may bring an action * * * to enjoin such person * * * from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof or, if the attorney-general should believe from such evidence that such person * * * actually has or is engaged in any such fraudulent practice, he may include in such action an application to enjoin permanently such person * * * from selling or offering for sale to the public within this state, as principal, broker or agent, or otherwise, any securities issued or to be issued. In said action an order or a judgment may be entered awarding the relief applied for or so much thereof as the court may deem proper. * * * "

While the word " whenever " is an adverb of time and means " at whatever time " in the future rather than the past, it also is expressive of condition or contingency similar to " if ", " in case ", " should " and similar words. Indeed, the first part of section 353, in respect of enjoining the continuance of the prescribed practices, states: " Whenever the attorney-general shall believe from evidence satisfactory to him that any person * * * is engaged or is about to engage in any of the * * * [proscribed] fraudulent practices [etc.] * * * ", whereas the second part, in respect of permanently enjoining such person from engaging in the securities business, reads: " * * * or, if the attorney-general should believe from such evidence that such person * * * actually has or is engaged in any such fraudulent practice [etc.] * * * "

The ten-year period of the Statute of Limitations (Civ. Prac. Act, § 53) begins to run when the fraud as the basis of equitable action is discovered or the facts with reference to the fraud were susceptible of discovery in the exercise of reasonable diligence (*Dyckman* v. *Dyckman,* 230 App. Div. 288). Of similar import are the words " Whenever the attorney-general shall believe from evidence satisfactory to him * * *."

This would seem to indicate that the word " Whenever " was intended to mean at any time after the act was effective the Attorney-General has evidence satisfactory to him that a person is engaged in or is about to engage in any such practices, he may apply for an injunction to enjoin same. Obviously, no Statute of Limitations would be involved in such an action against present or threatened practices. The second part beginning with the word " if " not only provides the additional remedy of permanent injunction from engaging in the security business against one who " is engaged " in the proscribed practices, but also against one who " actually has " engaged therein. Obviously, also, the defense of Statute of Limitations could be applicable only to the latter class, and the ten-year period would run qualified by the " Whenever " clause, beginning when the Attorney-General had satisfactory evidence of the fraudulent practices. In this case that would be either February 10, 1943 (conviction) or April 20, 1944 (affirmance).

This action is against the defendant as one who " actually has " engaged in such practices. If the ten-year statutory period of limitations fixed by section 53 of the Civil Practice Act is applicable and the period of imprisonment be not excluded but the charge that the conspiracy continued up to the date of filing the indictment on October 26, 1938, be accepted as proved and as fixing the date when the action under section 353 of the General Business Law accrued, then October 25, 1948, would be the last day of the ensuing ten-year period. In such contingency this action commenced on or about February 27, 1947, would not be barred. However, the defendant urges that as the State's action for injunction might have been brought when the acts stated as the particulars of the indictment were committed, that is, in 1935 and up to July 30, 1936, the ten-year period of limitation expired in 1946. Two factors bearing upon that argument are clear. In the first place, the defendant asserts the indictment and prosecution was a " test case " to determine whether the practices, which he states up to then had been customary and regarded as proper, were in fact violations of the Federal statute (Securities Exchange Act, § 9;

U. S. Code, tit. 15, § 78i, as amd.). If that be so it would be reasonable to expect that the Attorney-General would await the ultimate decision of the Federal criminal case before considering he had satisfactory evidence to believe the defendant had engaged in such practices as required the bringing of a civil action for injunction. Under defendant's theory of "test case" if he had been acquitted it may be assumed there would have been no civil action instituted. In the second place, the sentence imposed on February 19, 1943, was imprisonment for fifteen months. As such imprisonment would be completely effective in preventing the continuance of such practices, the institution of an action for injunction would hardly be expected during that period.

In *United States* v. *Minuse* (114 F. 2d 36, 38, *supra*) the Circuit Court of Appeals for the Southern District of New York, in relating the facts in the indictment and evidence, stated the conspiracy originated from an agreement of September 17, 1935, and carried on by means of "wash sales" in which ownership did not change, and by matched purchases and sales. The United States Circuit Court reversed for errors at the trial. The second trial again resulted in a conviction. Upon a second appeal, *United States* v. *Minuse* (142 F. 2d 388, *supra*), the conviction was affirmed. There, at page 390, the court said: "Finally, the appellants urge that the sentences imposed were unduly harsh. Minuse was given a term of fifteen months and Pelletier a term of one year and one day. Even if we thought the sentence too severe, which we do not, we could not review it. *Hodgkins* v. *United States*, 2 Cir., 279 F. 85, 94; *United States* v. *Steinberg*, 2 Cir., 62 F. 2d 77, 78, certiorari denied 289 U. S. 729, 53 S. Ct. 526, 77 L. Ed. 1478."

Certiorari was denied by the United States Supreme Court, but the evidence does not show how it came about that the fifteen-month term was ended in five months or whether the release was on parole. The evidence does show that after release the defendant obtained employment in a reputable occupation unrelated to the security business. It might reasonably be assumed under the circumstances that he would not return to the security business and therefore injunctive relief was unnecessary. On January 9, 1947, ten years having elapsed since the date of the last overt act specified in the indictment plus the five months' period of imprisonment outside the State of New York, defendant obtained employment as a salesman in the security business. The Attorney-General instituted this action by summons and complaint verified February 24, 1947,

which with order to show cause for a temporary injunction were served on February 27, 1947. Temporary injunction was granted by order of this court on March 21, 1947. The statutory period of limitations during which an action must be brought is computed, as defendant points out, from the time the right to relief by action has accrued. (*Tillman* v. *Guaranty Trust Co.,* 253 N. Y. 295; *Cary* v. *Koerner,* 200 N. Y. 253, affg. 139 App. Div. 811; *Haimes* v. *Shonwit,* 268 App. Div. 652, affd. 295 N. Y. 577.) It is also the law of this State that in a civil action the record of a conviction is only prima facie evidence of the facts upon which the party was convicted and is not conclusive. (*Schindler* v. *Royal Insurance Co.,* 258 N. Y. 310; *Matter of Donegan,* 265 App. Div. 774, affd. 294 N. Y. 704.) However, this court must accept the record of indictment and conviction in the Federal District Court which, while not conclusive, is the controlling evidence before this court and is more probable, persuasive and convincing than the defendant's present testimony of attempted explanation. As it is charged in the indictment that the conspiracy of the several defendants continued up to the date of the filing of the indictment, the combination, conspiracy and confederation and agreement with the other indicted defendants made defendant a participant in their acts; such conspiracy also constituted unlawful practices. While it may not be held that the conviction constituted unlawful practices, the admitted conviction in the first instance is prima facie evidence thereof. Consideration of all the evidence warrants the conclusion that such practices under the conspiracy count continued up to the date of the filing of the indictment. Here it may be observed that the words " fraud " and " fraudulent practice " should be given a wide meaning so as to include acts, although not originating in any actual evil design or contrivance to perpetrate fraud or injury to others, which nevertheless do by their tendency to deceive or mislead the purchasing public come within the purview of the act. (*People* v. *Federated Radio Corporation,* 244 N. Y. 33, affg. 216 App. Div. 250.)

From the foregoing it follows that plaintiff is entitled to the injunctive relief sought. Section 353 of the General Business Law provides that " * * * a judgment may be entered awarding the relief applied for or so much thereof as the court may deem proper." Defendant points out that this requires the exercise of discretion and also that the law under which he was convicted as well as the Martin Act were remedial of practices previously allowed or tolerated. The Martin Act

is a preventive statute intended to avoid fraud and illegal acts in the securities field before the public is damaged (General Business Law, § 353). There is no licensing statute in New York State similar to the Securities and Exchange Act, and similar to the statutory enactments in many of the States in the Union. The Martin Act injunction is the only protection people of this State are given against persons who, by their past conduct, cannot be trusted to deal fairly with the investing public.

Under section 953 of the New York Penal Law, the defendant's conspiracy to manipulate prices would constitute a felony. In the Federal Court this defendant has been proved beyond a reasonable doubt to be guilty of fraudulent practices condemned in New York State by the Martin Act and unfit to ·deal with the people's investment · funds. Accordingly, it cannot be said under the facts in this case that in the exercise of discretion less than a permanent injunction may be granted.

The facts deemed essential being stated and the issues presented disposed of in this opinion, judgment may be submitted on notice.