ESSEX COUNTY MAYORS' CONFERENCE, JOHN S. KOSKO, LEAGUE OF WOMEN VOTERS OF ESSEX COUNTY, PHYLLIS HALPERN, AND GREATER NEWARK CHAMBER OF COMMERCE, PLAINTIFFS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, NICHOLAS V. CAPUTO, ESSEX COUNTY CLERK, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 19, 1973.

394

Mr. *John J. Francis, Jr.* for plaintiffs (*Messrs. Shanley & Fisher,* attorneys).

*Mr. Francis P. McQuade,* Essex County Counsel, for defendants.

MARGOLIS, J. S. C., Temporarily Assigned. In this action in lieu of prerogative writs plaintiffs Essex County Mayors' Conference *et al.* seek by way of summary judgment to compel defendant Board of Chosen Freeholders of the County of Essex (hereinafter freeholders) to file with defendant Nicholas V. Caputo, Essex County Clerk (hereinafter county clerk), resolution No. 30643 (hereinafter Rotundo Resolution), dated September 28, 1972 and adopted pursuant to *N. J. S. A.* 40:41A–1 *et seq.,* commonly known as the Optional County Charter Law.

The facts appear to be uncontroverted, The Rotundo Resolution, entitled "Optional County Charter Law — Authorizing Charter Study Election November 6, 1973," in fact authorized an election to be held in Essex County on November 6, 1973 upon the question:

Shall a charter study commission be elected to study the present governmental structure of Essex County, to consider and make findings concerning the form of county government and to make recommendations thereon?

The resolution, as pertinent, states:

WHEREAS, the Essex County Board of Chosen Freeholders has demonstrated a sincere and effective desire in 1971 and 1972 to update Essex County Government * * *

WHEREAS, the Board overwhelmingly desires to avail itself of the best and most economic procedure to give to the voters of Essex County an opportunity to review their County Government; and to determine whether the County Government could be strengthened, made more clearly responsive or accountable to the people and whether its operation could be more economic or efficient under a changed form of Government; and

WHEREAS, such review cannot by the terms of P. L. 1972, c. 154 be initiated at the coming General Election of November 7, 1972 because not less than 60 days must elapse before an election can be held to initiate such review; now, therefore, be it

RESOLVED, that subject to any future amended procedure more economic and effective than that presently provided in the Optional

County Charter Law, the Board hereby authorizes an election to be held at the first General Election available under the law, which will be on November 6, 1973 in Essex County upon the question: 'Shall a charter study commission be elected to study the present governmental structure of Essex County, to consider and make findings concerning the form of County Government and to make recommendations thereon?' "

This resolution was adopted by the affirmative vote of eight of the nine members of the board, one member being absent; was presented to and approved by the county supervisor on October 2, 1972, and was filed with the clerk of the freeholders on the same date after having been approved as to form and legality by county counsel.

On the same day (September 28, 1972), following the passage of the Rotundo resolution, freeholders were requested to act upon a subsequent resolution (No. 30644) entitled "Optional County Charter Law — Implementation of Charter Study" (hereinafter Hausmann resolution), the pertinent provisions of which read as follows:

WHEREAS, Essex County with its complexity of social, financial and governmental problems is more in need of better tools of government than any other county in New Jersey; now, therefore, be it

RESOLVED, that the Essex County Board of Chosen Freeholders immediately take the action required under Senate Bill 283 to implement a charter study for Essex County.

This resolution received only two affirmative votes, with six freeholders not voting, and was therefore defeated.

Freeholders have conceded at oral argument that the Rotundo resolution was thereafter "deliberately" not filed with the county clerk, as provided in the enabling statute. Thus, as the situation now stands, the proposed question of county charter study would not appear on the ballot at the general election of November 6, 1973.

Plaintiffs filed this action on May 30, 1973 by verified complaint, and on plaintiffs' application this court ordered freeholders to show cause on June 8, 1973: (1) why the Rotundo resolution should not be filed with the county clerk,

and (2) why the aforesaid question should not be placed on the ballot at the election to be held on November 6, 1973. However, this court declined to restrain or enjoin freeholders from rescinding or taking any other steps to avoid or nullify the resolution. To the knowledge of this court, to date freeholders have taken no action of any kind with respect thereto.

Oral argument was heard on June 8, 1973, the return date of the order to show cause. This opinion disposes of the issues presented in the order to show cause as well as plaintiff's motion for summary judgment pursuant to *R.* 4:69–2.

*N. J. S. A.* 40:41A–1 provides, as pertinent:

Whenever authorized by resolution of the board of freeholders or on petition of the registered voters of any county, an election shall be held in the county upon the question, "Shall a charter study commission be elected to study the present governmental structure of * * * county, to consider and make findings concerning the form of county government and to make a recommendation thereon?" A petition calling for such an election shall bear the signatures of a number of persons registered to vote in the county equal to or exceeding in number 10% of the persons registered to vote in the county on the fortieth day preceding the most recent previous primary or general election. Whenever such resolution or petition shall be filed with him, the county clerk shall provide for submission of the question at the general election occurring not less than 60 days after the date of such filing. At the election, the question shall be submitted in the same manner as other public questions.

When a resolution or petition for the election of a charter study commission has been duly filed with the county clerk, no other such resolution or petition and no other proceedings for the adoption of any other charter or form of government available to the county may be filed unless the voters shall decide the aforesaid question in the negative or until the charter study commission elected by the voters shall have been discharged.

In interpreting the section it is clear that the Legislature desired to create two methods by which the citizens of the counties would be permitted to decide whether a charter study commission should be elected to study the present governmental structure of a county, and "to make findings

concerning the form of county government and to make recommendations thereon."

Plaintiffs maintain that since the freeholders have chosen to exercise their powers under *N. J. S. A.* 40:41A–1 by adopting the resolution, the act of "filing" the resolution with county clerk is a ministerial act or duty within the purview of *R.* 4:69–2. Freeholders, however, insist that the "filing" requirement under *N. J. S. A.* 40:41A–1 is a separate, distinct act — a decision which freeholders must make irrespective of, or in addition to, adopting the resolution. Freeholders assert that they deliberately refrained from inserting in their resolution any mandate that it be filed, and further, that it was their prerogative to determine whether or not to file the resolution at a later date. In short, freeholders argue that their refusal to file the resolution with the county clerk is within their discretion under the language of *N. J. S. A.* 40:41A–1, and, therefore, not properly the subject of judicial review.

Freeholders also allege that this action is untimely in that it was not brought within 45 days after adoption of the resolution and approval thereof by the county supervisor.

*R.* 4:69 provides that no action in lieu of prerogative writs shall be commenced later than 45 days after accrual of the right to the review, hearing, or relief claimed. They interpret plaintiffs' claim as seeking a mandatory insertion in the resolution of a provision that the resolution should be filed immediately with the county clerk. Then, arguing in the alternative as to the timeliness of this application, freeholders charge that it is, in fact, premature to seek to compel them to perform the act of filing the resolution, since under *N. J. S. A.* 40:41A–1 they have until 60 days before a general election in which to file with the county clerk and that time has not as yet expired.

If "filing" the resolution with the county clerk is, in fact, a ministerial act, it is the opinion of this court that plaintiffs' claim is not untimely. As proofs submitted by

way of affidavit and oral argument suggest, freeholders have never precisely stated with finality when, or if, they will file the resolution. In their brief, plaintiffs allege that the Essex County Conference of Mayors repeatedly requested an answer from defendants as to whether the resolution would be filed, and that it was not until May 1, 1973 that plaintiffs learned (allegedly through the press) that freeholders did not intend to file the resolution. The alternative arguments of freeholders on this point are untenable.

It is the opinion of this court that the 45-day limitation of *R.* 4:69 should not apply so as to limit plaintiffs' action since plaintiffs do not seek to "review" an act of the freeholders nor do they petition the court for insertion into the resolution of a filing mandate. Rather, plaintiffs seek to enforce a continuing right created by the passage of the resolution. Instead of seeking a "review" of formal action by freeholders, plaintiffs seek "relief" by way of prerogative writ in the nature of *mandamus*. See *Yanuzzi v. Mayor, etc., Spring Lake,* 22 *N. J.* 567 (1956).

As stated in *Lettieri v. State Board of Medical Examiners,* 24 *N. J.* 199, 206 (1957), "An agency which would claim the 30-day ban should act and speak with unmistakable finality." Freeholders by their own admission have failed to act with respect to the resolution in such manner as would in any way attach finality to it.

Nor is this action premature merely because the county clerk is mandated to place the question on the ballot, so long as the resolution is filed at least 60 days before the general election. It would be inequitable to require plaintiffs and the citizenry to await the possible action or inaction of freeholders, or to be compelled to obtain the requisite signatures required for a petition, when freeholders have, in fact, already passed the resolution calling for such election. Under their theory, freeholders would be free to refrain from taking any action until the statutory period has run, and then formally express their intention

not to file the resolution, thereby effectively foreclosing placement of the question on the ballot (unless requisite petitions have been obtained and filed).

To date, the courts of this State have not had occasion to determine whether the act of filing a resolution with the county clerk as set forth in the foregoing statute is, in fact, an obligatory ministerial act subject to mandamus.

Freeholders claim that the Legislature intended the act of "filing" to be a distinct legislative act and, therefore, not subject to *mandamus*. In support thereof they refer the court to the proposed draft of the Optional County Charter Law issued by the State of New Jersey, County and Municipal Government Study Commission, in which, freeholders allege, there was no clear separation of the intent to have an election and the intent to file. Freeholders interpret this draft as demonstrating that the language contained in the adopted version of the bill, specifically the use of the phrase "Whenever such resolution * * * shall be filed," reflects a legislative intention to separate the expressed intent to have an election from the intent to file the resolution with the county clerk. This court does not agree.

The absence of any specific provision requiring the act of filing, separate and apart from adoption of the resolution, or as part of the resolution, in both the draft and finalized bill cannot logically be interpreted as freeholders suggest.

Freeholders attempt to draw a comparison between the filing provisions of *N. J. S. A.* 40:41A-1 and those contained in the Optional Municipal Charter Law (Faulkner Act), and allege that the language of *N. J. S. A.* 40:41A-1, specifically the clause "whenever such resolution or petition shall be filed with him, the county clerk shall provide for submission of the question at the next general election * * *," indicates a legislative intent to add a separate filing provision to that contained in the Faulkner Act. In the Faulkner Act the municipal clerk is mandated to provide for the submission of the question and

election of a charter study commission whenever authorized by ordinance of the governing body of a municipality, or upon petition of the registered voters, or, using words of the act, "In either event, the municipal clerk shall provide for the submission of the question * * * at the next general or regular municipal election * * *." (*N. J. S. A.* 40: 69A-1). It should be noted, however, that the municipal clerk in the Faulkner Act is also the clerk of the governing body which may adopt an ordinance authorizing an election, or with whom any petitions are filed.

In *N. J. S. A.* 40:41A-1, however, the county clerk is not the clerk of the freeholders and therefore must await either a freeholder resolution or the filing of petitions before he can place the question on the ballot.

■ This court construes "whenever" or "in either event," as used in these statutes, to have similar meaning. If any legislative distinction was intended, it is simply that under *N. J. S. A.* 40:41A-1 the filing of either a resolution or a petition, as the case may be, bars the possibility of any other resolution, petition or other proceedings for the adoption of any other charter or form of government. Under both statutes, however, the obligation of the clerk is purely ministerial.

An interpretation by this court of the precise language of *N. J. S. A.* 40:41A-1 and, in particular, the use of the word "whenever," as that word appears in two separate portions of the first paragraph thereof, is essential to a determination of the basic issue remaining before this court.

The pertinent language commences and states as follows:

*Whenever* authorized by resolution of the board of freeholders * * * an election shall be held * * *. [Emphasis added].

Further into this paragraph, the word "whenever" is again used:

* * * Whenever such resolution * * * shall be filed with him, the county clerk shall provide for submission of the question at the

next general election occurring not less than 60 days after the date of such filing * * *.

The word "whenever" has been the subject of judicial interpretation through the years. The United States Court of Appeals has interpreted the word "whenever" in *Hobby v. Hodges,* 215 *F.* 2d 754 (10 Cir. 1954) :

Webster's New International Dictionary of the English Language treats the word "whenever" as an adverb and a conjunction. When used as an adverb, it is defined to mean, "At whatever time; no matter when." When used as a conjunction, it is defined to mean, "At any or all times that; in any or every instance which." Either as an adverb or conjunction, the word "whenever" cannot be defined as a restrictive word. It generally refers to the future and means "at whatever time." [at 758]

In *People v. Minuse,* 190 Misc. 57, 70 *N. Y. S.* 2d 426, 431 (Sup. Ct. 1945), the following language appears : "* * * the word 'whenever' is an adverb of time and means 'at whatever time' in the future rather than the past * * *." Similarly, the Supreme Court of Michigan, in *People v. Merhige,* 212 Mich. 601, 180 *N. W.* 418 (1920) interpreted the word "whenever" contained in a statute, the applicable portion of which reads :

"That whenever any person shall plead guilty to an information filed against him in any circuit court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea to become satisfied * * *."

Construing "whenever", the court held : " 'Whenever' is equivalent to 'as soon as', 'at whatever time' * * *."

*Black's Law Dictionary* (4th ed rev.) defines the word "whenever" as follows : "At whatever time; at what time soever."

It is the court's view that the word "whenever," as used in *N. J. S. A.* 40 :41A–1, was intended by the Legislature to indicate that "at whatever time" the freeholders choose to enact a resolution authorizing an election on the

question of a charter study, *then* an election *shall* be held. Freeholders were at liberty to authorize or refuse to authorize an election, but once having so authorized, it shall be held.

It is to be noted that the Legislature has not provided for any requirement that freeholders' action should, or could, be a two-step procedure, *i. e.*, adoption of the resolution and a subsequent action calling for the filing of same with the county clerk. Had the Legislature intended to do so, it could have clearly so stated.

This court cannot construe the legislative language as granting to freeholders the prerogative to authorize, by resolution, the election referred to, and then to thereafter make that action a nullity by the simple device of refusing or failing to file the resolution with the designated county official.

Further employing the above definition, it is clear that the second "whenever" as stated in the statute refers to the action that the county clerk "shall" take upon receipt of the resolution, *i. e.*, the mechanical acts necessary to place the question on the ballot for the appropriate general election. To hold otherwise would thwart the underlying purpose of the statute.

This court cannot ascribe to a statute an interpretation which would lead to a result contrary to the main object of it where there is an obviously permissible construction which will effectuate the legislative intention.

Freeholders also claim that their rejection on September 28, 1972 of the Hausmann resolution was due to the insistence of the proponent of said resolution that said resolution provided for filing while the adopted Rotundo resolution did not. Freeholders suggest the difference was due to the wording of the last paragraph of the Hausmann Resolution:

"RESOLVED, that the Essex County Board of Chosen Freeholders imemdiately take the action required under senate B. 11283 to implement a charter study for Essex County."

It is the opinion of this court that the Hausmann resolution does not in legal consequence differ from the adopted Rotundo resolution and, in fact, was not as precise a mandate to have an election as the Rotundo resolution which clearly stated:

"* * * the Board hereby authorizes an election to be held at the first General Election available under the law, which will be on November 6, 1973 * * *."

By the language of the Rotundo resolution, freeholders clearly and unequivocally exercised a determination to place on the November 6, 1973 general election ballot the question of a charter study.

It is the opinion of this court that under *N. J. S. A.* 40: 41A–1, once freeholders adopted the Rotundo resolution authorizing an election on the question of a charter study, the remaining act of filing the resolution with the county clerk became merely a ministerial act subject to *mandamus*.

It is, therefore, ordered that defendant freeholders forthwith file the Rotundo resolution with the county clerk so that the avowed purposes contained in the resolution and in *N. J. S. A.* 40:41A–1 *et seq.* can be implemented. Judgment accordingly.